UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAIN A. GONZALES,<br><br>            Plaintiff,<br><br>     v.<br><br>CITY OF CLOVIS, et al.,<br><br>            Defendants.<br>_____/ | CASE NO. 1:12-cv-00053-AWI-SKO<br><br>**ORDER DISMISSING PLAINTIFF'S FIRST AMENDED COMPLAINT AND GRANTING 30 DAYS LEAVE TO AMEND**<br><br>(Docket No. 5) |

## I.    INTRODUCTION

On January 11, 2012, Plaintiff Cain Gonzales ("Plaintiff") filed a complaint against the City of Clovis; the Clovis Police Department; and the Chief of the Clovis Police Department, Janet Davis. (Doc. 1.) The complaint was dismissed, and Plaintiff filed a First Amended Complaint ("FAC") on May 14, 2012, naming an additional defendant, Officer Woods ("Defendant Officer Woods"). (Doc. 5.) For the reasons set forth below, Plaintiff's complaint is DISMISSED without prejudice and with 30 days leave to amend.

## II.    FACTUAL BACKGROUND

Plaintiff alleges that on September 13, 2010, police officers with the Clovis Police Department executed a search warrant at his residence, which resulted in charges against Plaintiff for possession of a controlled substance. (Doc. 5, ¶ 34.) Officers, including Defendant Officer

Woods, entered Plaintiff's residence via the backdoor, but they failed to announce themselves, state who they were, or the purpose of their presence. (Doc. 5, ¶ 35.) During the course of the search, an officer deployed a "flash-bang grenade" that caused Plaintiff second- and third-degree burns. (Doc. 5, ¶¶ 36, 38.) Further, Plaintiff asserts that unidentified officers present during the search seized some of Plaintiff's property, including gold, jewelry, coins, television sets, laptop computers, and flat-screen monitors. (Doc. 5, ¶ 51.) What the officers did not take, they destroyed and smashed. (Doc 5, ¶ 51.)

Following the search of his residence, Plaintiff was arrested and transported to the Clovis Police Department where he was detained for fifteen hours before being transported to the Fresno Community Hospital, even though he was severely burned and experienced pain and suffering from the grenade. (Doc. 5, ¶ 40.) Plaintiff was treated at the hospital for approximately four hours and was returned to the Fresno County Jail where he was booked. (Doc. 5, ¶ 40.)

After being booked, Plaintiff was released from custody on his own recognizance, due to overcrowding of the jail and downsizing. (Doc. 5, ¶ 41.) However, during the "book and release process," Plaintiff "posted [bail] and while the bail was posted[,] the jail staff never notified the bonds[man] that his client was released on his own recognizance due to overcrowding." (Doc. 5, ¶ 41.)

At some point after his release, Plaintiff was "sought after by bounty hunters, [and] despite his injuries, [they] took Gonzales by brute force " while Plaintiff was in the process of changing a bandage on his burns caused by the "flash bang grenade." (Doc. 5, ¶ 42.)

After his release from jail, Plaintiff called the police department to report that some of his personal property had been stolen during the time that he was detained after his arrest on September 13, 2010. (Doc. 5, ¶ 44.) "While making that report, the police arrested [Plaintiff] again and charged him with receiving stolen property." (Doc. 5, ¶ 44.) Eventually, all charges "[were] dropped, (no charge would be filed at that time), by the [Clovis Police Department]." (Doc. 5, ¶ 46.)

In December 2006, Plaintiff filed a complaint against the City of Fresno, Police Chief Jerry Dyer, the County of Madera, and Madera County Sheriff John Anderson asserting, *inter alia*, a claim under 42 U.S.C. § 1983. (*Gonzalez v. City of Fresno, et al.*, 1:06-cv-01751-OWW-TAG). Plaintiff

asserts that Defendants'[1] actions against him, as set forth above, are part of "a concerted campaign to thwart Plaintiff's efforts to seek redress of his prior lawsuits against the City of Fresno [and] Chief Dyer[,] and to cause him physical harm and emotional anguish." (Doc. 5, ¶ 20.) Plaintiff alleges that Defendants' conduct was motivated from a "desire to retaliate against Plaintiff for having sued the City of Fresno and Fresno Police Chief Jerry Dyer." (Doc. 5, ¶ 92.) Plaintiff contends that the previous case he filed against the City of Fresno involved "a challenge to the constitutionality of a police officer's search, upon reasonable suspicion, without first having obtained a search warrant." (Doc. 5, ¶ 92.) In that case, the district court issued a decision and order granting the defendants' motions for summary judgment. (Doc. 5, ¶ 94.) Defendants in this matter "were motivated entirely by [an] intent to harass Plaintiff and deny him equal protection of the laws" in retaliation for the prior suit. (Doc. 5, ¶ 95.)

### III.   DISCUSSION

**A.   Screening Standard**

In cases where the plaintiff is proceeding *in forma pauperis*, the Court is required to screen each case and shall dismiss the case at any time if the Court determines that the allegation of poverty is untrue, or the action or appeal is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2). If the Court determines that the complaint fails to state a claim, leave to amend may be granted to the extent that the deficiencies of the complaint can be cured by amendment. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc).

**B.   Legal Standard**

In determining whether a complaint fails to state a claim, the Court applies the same pleading standard used under Federal Rule of Civil Procedure 8(a). Under Rule 8(a), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me

---

[1] Plaintiff refers generically to "Defendants" throughout the complaint. Where a defendant is not specifically identified, reference to "Defendants" in this order is a reference to all the named Defendants collectively.

accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). "[A] complaint [that] pleads facts that are 'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Further, although a court must accept as true all factual allegations contained in a complaint, a court need not accept a plaintiff's legal conclusions as true. *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (quoting *Twombly*, 550 U.S. at 555).

**C.     Claims Pursuant to Section 1983**

Plaintiff states his claims pursuant to 42 U.S.C. § 1983. In his FAC, Plaintiff pleads six counts enumerating various alleged violations of his constitutional rights.

Section 1983 of Title 42 of the United States Code does not provide substantive rights; rather, it is "a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (citations and internal quotation marks omitted). In pertinent part, Section 1983 states as follows:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in any action at law, suit in equity, or other proper proceeding for redress . . .

42 U.S.C. § 1983.

To sufficiently plead a cognizable Section 1983 claim, a plaintiff must allege facts from which it may be inferred that (1) he was deprived of a federal right, and (2) a person who committed the alleged violation acted under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Williams v. Gorton*, 529 F.2d 668, 670 (9th Cir. 1976). Additionally, a plaintiff must allege that he suffered a specific injury and show a causal relationship between the defendant's conduct and the injury suffered. *See Rizzo v. Goode*, 423 U.S. 362, 371-72 (1976).

**1.    Count I ("Right to Petition Government for the Redress of Grievances")**

Plaintiff generally alleges that Defendants Davis, Woods, and Doe Officers 1 through 20 have conspired among themselves to bring about the repeated arrest of Plaintiff and punish him for his efforts to seek relief. (Doc. 5, ¶ 60.) Plaintiff asserts that Defendants have "used physical force and intimidation to literally burn Plaintiff into submission." (Doc. 5, ¶ 61.) The "crimes of which Plaintiff has been accused are entirely pretextual and the Defendants knew that there was no basis in law or fact to arrest and charge Plaintiff with any crime at the time of his second arrest because they lack[ed] probable cause." (Doc. 5, ¶ 62.) Plaintiff avers that

> The individual Defendants engaged in a concerted campaign to deprive Plaintiff of his First Amendment rights in violation of the United States Constitution and to subject him to physical assault and emotional trauma through repeated arrests without probable cause.

(Doc. 5, ¶ 69.)

Plaintiff claims that his treatment by Defendants in repeatedly arresting him was motivated by "Defendants' desire to retaliate against [him] for having suited the City of Fresno and Fresno Police Chief Jerry Dyer" in a case entitled *Gonzalez v. City of Fresno*, 1:06-cv-01751-OWW-TAG (E.D. Cal.). Plaintiff alleges that the Defendants had no lawful basis for their actions in arresting him on September 13, 2010, or for his subsequent second arrest. Plaintiff contends that "Defendants' actions were motivated entirely by [an] intent to harass Plaintiff and deny him the equal protection of the laws." (Doc. 5, ¶ 95.)

A Section 1983 claim may be stated where a plaintiff alleges retaliation by state actors for the exercise of his First Amendment rights. *See Mt. Healthy City Bd. of Educ. v. Doyle* ("*Mt. Healthy*"), 429 U.S. 274, 283-84 (1977). Retaliation is not expressly referred to in the Constitution, but it is actionable because retaliatory actions may tend to chill an individual's exercise of constitutional rights. *See Perry v. Sindermann*, 408 U.S. 593, 597 (1972). To adequately state a retaliation claim, the plaintiff must plead facts indicating that the type of activity in which plaintiff was engaged was protected by the First Amendment and that the protected conduct was a substantial or motivating factor for the alleged retaliatory acts. *See Mt. Healthy*, 429 U.S. at 287. Retaliation is not adequately pled by simply pointing to adverse activity by the defendant after protected speech.

5

Instead, the plaintiff must set forth facts demonstrating a nexus between the two. *See Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000) (retaliation claim cannot rest on the logical fallacy of *post hoc, ergo propter hoc*, i.e., "after this, therefore because of this").

Plaintiff's retaliation claim is not cognizable because there are no facts alleged that suggest a nexus between the filing of Plaintiff's complaint in *Gonzalez v. City of Fresno*, Case No. 1:06-cv-01751-OWW-TAG and the complained-of-actions of Defendants in searching Plaintiff's house and arresting him twice. While Plaintiff's arrests occurred after the civil action in *Gonzalez v. City of Fresno* was filed, a temporal relationship between these events by itself is not sufficient to establish a nexus. *Huskey*, 204 F.3d at 899. To state a cognizable retaliation claim, Plaintiff must plead facts showing a nexus between the complained-of actions of Defendants and the suit Plaintiff filed in *Gonzalez v. City of Fresno*.

**2.     Count II ("Federal Equal Protection – Class of One")**

In Count II of the FAC, Plaintiff asserts that Defendants violated his rights under the Equal Protection Clause of the Fourteenth Amendment in arresting and harassing him. Plaintiff claims that Defendants' conduct treats Plaintiff disparately from other similarly situated citizens.

A claim under the Equal Protection Clause requires a plaintiff to allege facts showing that the government defendant acted "with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Thornton*, 425 F.3d at 1166 (quoting *Lee v. City of L.A.*, 250 F.3d 668, 686 (9th Cir. 2001)). Plaintiff must establish that he is a member of a protected class and that he was discriminated *because of his membership* in that protective class. Here, Plaintiff fails to allege facts showing that he is a member of a protected class and was discriminated on that basis. *See City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 440-42 (1985) (listing constitutionally recognized protected classes). As such, Plaintiff's claim for violation of the Equal Protection Clause under the Fourteenth Amendment is not cognizable.

**3.     Count III  (Fourth Amendment Claims)**

Count III of Plaintiff's complaint alleges that Defendants used unreasonable force during Plaintiff's arrest on September 13, 2010, in violation of Plaintiff's rights under the Fourth Amendment. (Doc. 5, ¶ 98.) Beyond that bare allegation, however, the facts pled in this count

appear to relate to a claim challenging the reasonableness of Plaintiff's arrest. Plaintiff alleges that there was no probable cause for his September 13, 2010, arrest because the search warrant obtained by the Clovis Police Department for his residence contained the wrong name. (Doc. 5, ¶ 102.) Plaintiff also alleges that no probable cause existed to detain or arrest him "and no reasonable official could have believed [Plaintiff] was committing a crime by a tip from an unidentified party." (Doc. 5, ¶ 103.)

The Fourth Amendment establishes the right "to be secure in . . . persons, houses, papers, and effects, against unreasonable searches and seizures" and mandates issuance of warrants with "probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." A claim of unlawful arrest is cognizable under Section 1983 for violation of the Fourth Amendment's prohibition against unreasonable search and seizure if the plaintiff alleges that the arrest was without probable cause or other justification. *See Larson v. Neimi*, 9 F.3d 1397, 1400 (9th Cir. 1993).

Plaintiff's allegations regarding his claim of unreasonable or unlawful arrest are not clear. Plaintiff alleges that he was arrested on two occasions: once on September 13, 2010, apparently following the search of his home (*see* Doc. 5, ¶ 77), and again at some later unspecified date. (*See* Doc. 5, ¶ 44; ¶ 80 ("the police arrested [Plaintiff] again and charged him with receiving stolen property").) In the FAC, Plaintiff asserts that "Defendants omitted any mention in their police reports or the return on the search warrant that the name of the search warrant was incorrect as reported [by] KFSN Channel 30, a person named Ascencio Cain arrested for possession of methamphetamine." (Doc. 5, ¶ 39.) Plaintiff contends that there was no probable cause to arrest him because the Clovis Police Department "based their probable cause on a defective warrant. The warrant contained the wrong name of the Plaintiff." (Doc. 5, ¶ 102.) It is unclear whether Plaintiff asserts that the search warrant was facially invalid because it contained the wrong name and therefore is challenging the constitutionality of the search of his residence, or whether Plaintiff is challenging his arrest based on an invalid warrant, or both. To the extent Plaintiff is challenging the reasonableness of his arrest, it is unclear to which arrest Plaintiff is referring.

To be adequate, a claim must set out who is being sued, for what relief, and on what theory, with enough detail to guide discovery. *Bautista v. L.A. Cnty.*, 216 F.3d 837, 840-41 (9th Cir. 2000). Further, each claim should be stated in a separate count. *Id.* Regarding the search of his residence and his two arrests, the complaint contains few factual allegations, making it difficult to ascertain the basis of Plaintiff's claim or claims under the Fourth Amendment. Due to the lack of factual allegations, Plaintiff's claims under the Fourth Amendment for unreasonable search and seizure do not satisfy Rule 8's requirement of providing fair notice of the nature of Plaintiff's claims and the factual grounds upon which the claims rest. *Twombly*, 550 U.S. at 555.

Further, in a different section of the FAC, Plaintiff claims that officers destroyed property during the search of his residence. (*See* Doc. 5, ¶ 51.) Yet, allegations about the manner of the search are not set out in the claim for violation of Plaintiff's Fourth Amendment rights. It is unclear whether Plaintiff is challenging the constitutionality of the search as unreasonable due to unnecessary destruction of property. *Boyd v. Benton*, 374 F.3d 773, 780 (9th Cir. 2004) (unnecessary destruction of property or use of excessive force can render a search unreasonable). Moreover, there are no factual details about the search other than the bare allegation that certain property of Plaintiff's was destroyed or confiscated during the course of the search. To adequately state a claim, Plaintiff must allege facts showing how the destruction of his property during the search was unnecessary given the situation.

Finally, Plaintiff alleges that, when officers entered his residence pursuant to a search warrant, none of the officers announced their presence, stated who they were, or the purpose of their presence. (Doc. 5, ¶ 35.) The Fourth Amendment's protection against unreasonable searches and seizures requires law enforcement personnel to knock on the door and announce their presence to provide residents an opportunity to open the door prior to entering a dwelling. *Wilson v. Arkansas*, 514 U.S. 927, 931-32 (1995). The allegation related to the officers' failure to announce themselves is contained in the "Facts" section of the FAC, but it is not pled as a part of Plaintiff's claims against Defendants. To the extent that Plaintiff is challenging the reasonableness of the search in this regard, Plaintiff should set forth those allegations as a "claim" or a "count" and identify the

Constitutional Amendment under which they are brought to give Defendants fair notice of Plaintiff's claims and the grounds upon which they rest. *Twombly*, 550 U.S. 544, 554-55.

To remedy the defects in Plaintiff's claims for unreasonable search and seizure, Plaintiff should set out the facts showing how the September 13, 2010, search of his residence was unconstitutional – e.g., because it was allegedly conducted without a warrant or without probable cause or that it was performed pursuant to an invalid search warrant. Moreover, to the extent Plaintiff is challenging the constitutionality of either of his arrests, Plaintiff should set out these allegations in separate claims pleading facts that show how each arrest he is challenging was unreasonable. *Bautista*, 216 F.3d at 840-41 ("Separate counts will be required if necessary to enable the defendant to frame a responsive pleading or to enable the court and the other parties to understand the claims.") (internal citations and quotation marks omitted).

**4.    Count IV ("Malicious and Excessive Force Claims" and "Duty to Protect")**

**a.    Claim for "Malicious and Excessive Force"**

In Count IV, Plaintiff attempts to state an excessive force claim, but the facts are insufficient. Claims asserting officers used excessive force during the course of an arrest, investigatory stop, or other seizure are analyzed under the Fourth Amendment's prohibition against unreasonable seizures. *Graham v. Connor*, 490 U.S. 386, 394 (1989). To prevail on a Section 1983 excessive force claim, a plaintiff must show that the officer's actions were objectively unreasonable under the circumstances. *Id.* at 388.

Here, while it appears Plaintiffs' excessive force claim rests on the officers' deployment of a flash-bang device during the search of his residence, Plaintiff provides no allegations regarding the circumstances of the officers' use of the device. For example, Plaintiff does not state what he was doing or where he was in the house at the time the device was deployed. He asserts only that police officers entered his residence by the back door without announcing themselves, the "flash bang" device was deployed minutes after the officers knocked down the door to serve their search warrant, and Plaintiff was burned by a "flash bang grenade" thrown by an unidentified police officer. (Doc. 5, ¶¶ 35-36, 113.) Notably absent are any allegations regarding warnings or lack of warnings by

officers prior to deployment of the device, the time of day the incident occurred, or any other factual details to support how the officers' use of the device was unreasonable.

Due to the lack of details regarding the circumstances under which the officers deployed the "flash bang" device, the claim is not cognizable. To state a cognizable claim, Plaintiff must allege facts showing how the officers' conduct was unreasonable under the circumstances. *Graham*, 490 U.S. at 388.

### b. Claim for Deliberate Indifference to Serious Medical Need Pursuant to the Fourteenth Amendment

Plaintiff also appears to assert a claim for deliberate indifference to a serious medical need in violation of Plaintiff's Fourteenth Amendment rights. As Plaintiff was not incarcerated at the time of the alleged incidents, his claim is analyzed under the Due Process Clause of the Fourteenth Amendment. *Jones v. Blanas*, 393 F.3d 918, 931 (9th Cir. 2004) (the more protective standard of the Fourteenth Amendment applies when a detainee has not been convicted of a crime); *Gibson v. County of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002) (because plaintiff "had not been convicted of a crime, but had only been arrested, his rights derive from the Due Process Clause rather than the Eighth Amendments' protection against cruel and unusual punishment"). At a minimum, the Fourteenth Amendment imposes the same duty to provide adequate medical care to those detained as imposed by the Eighth Amendment as to incarcerated individuals: "Persons in custody ha[ve] the established right to not have officials remain deliberately indifferent to their serious medical needs." *Gibson*, 290 F.3d at 1187.

The two-part test for deliberate indifference requires the plaintiff to show (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds, WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) (internal quotation marks omitted)). Deliberate indifference is shown by a "purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference." *Id.*

(citing *McGuckin*, 974 F.2d at 1060) (internal quotation marks omitted). Where a prisoner is alleging a delay in receiving medical treatment, the delay must have led to further harm for the prisoner to make a claim of deliberate indifference to serious medical needs. *See Berry v. Bunnell*, 39 F.3d 1056, 1057 (9th Cir. 1994).

Plaintiff has not alleged when and how any Defendant became aware of his injuries such that each deliberately delayed providing him medical care. There are insufficient facts pled showing which Defendants were personally involved or were integral participants in the events that delayed Plaintiff's medical care. Without sufficient factual allegations, Plaintiff's claim for deliberate and indifferent delay of medical care is not cognizable. To the extent Plaintiff elects to amend this claim, it should be stated as a separate count or claim from Plaintiff's excessive force claims under the Fourth Amendment.

### c. "Duty to Protect" Claim

Plaintiff asserts that Defendants failed to protect him and "in doing so harmed him seriously and violated his right under the Fourteenth Amendment to protect him from danger and harm. The failure of the duty to protect caused him great harm and suffering." (Doc. 5, ¶ 117.) Plaintiff cites *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189 (1989), and alleges that Defendants are liable for their failure to protect him. (Doc. 5, ¶ 117.)

A constitutional duty to protect may arise where affirmative conduct on the part of the state has placed a plaintiff in danger. *L.W. v. Grubbs*, 974 F.2d 119, 121 (9th Cir. 1992). It may also arise where the state has created a special relationship with a person, as in the case of custody or involuntary hospitalization. In such instances, the state must ensure those persons minimal levels of care and protection. *DeShaney*, 489 U.S. at 200. Here, however, there is no alleged third party from whom Defendants failed to protect Plaintiff. *See Leffall v. Dallas Independent Sch. Dist.*, 28 F.3d 521, 530-31 (5th Cir. 1994) (state-create danger theory of liability requires Plaintiff to present evidence that state actor took affirmative action which increased risk that plaintiff would be harmed by third persons). Moreover, Plaintiff was not in custody at the time his injuries occurred such that he may be considered among the "particular individuals" with respect to whom an affirmative constitutional duty to protect may arise. *DeShaney*, 489 U.S. at 198. Liberally construed, Plaintiff's

11

"duty to protect" claim appears to be an attempt to plead a Fourth Amendment claim for excessive force, which has been addressed above. Plaintiff's "duty to protect claim" is not cognizable.

### 5. Count V ("Failure to Train Supervise and Discipline")

In Count V of Plaintiff's complaint, he asserts that the City of Clovis is liable for its failure to train officers. A failure to train claim must allege the following facts: (1) plaintiff was deprived of a constitutional right, (2) the municipality had a training policy that "amounts to deliberate indifference to the [constitutional] rights of the persons' with whom [its police officers] are likely to come into contact," and (3) plaintiff's constitutional injury would have been avoided had the municipality properly trained those officers. *Blakenhorn v. City of Orange*, 485 F.3d 463, 484 (9th Cir. 2007).

Here, Plaintiff does not allege what conduct evidenced a failure to train on the part of the City of Clovis. Plaintiff must identify how the City of Clovis failed to train, how the failure to train caused Plaintiff harm, and explain how that failure to train was obvious and the constitutional injury that was likely to occur. *Young v. City of Visalia*, 687 F. Supp. 2d 1141, 1148-50 (E.D. Cal. 2009). In sum, there are no facts pled that indicate how the City of Clovis inadequately trained its officers and the claim is not cognizable.

### 6. Count VI ("Common Law Assault and Battery")

Count VI of Plaintiff's complaint sets out a claim pursuant to the Federal Tort Claims Act (the "FTCA"). The FTCA is the exclusive remedy for tortious conduct against the United States. *FDIC v. Craft*, 157 F.3d 697, 706 (9th Cir. 1998) ("The FTCA is the exclusive remedy for tortious conduct by the United States, and it only allows claims against the United States.") Here, the United States is not among the named defendants; thus, there is no viable FTCA claim stated.

### 7. Claims Against Defendant Clovis Police Chief Janet Davis

Plaintiff names the Chief of the Clovis Police Department as a Defendant in her individual capacity. (Doc. 5, ¶ 11.) A section 1983 claim on the basis of supervisorial liability is only cognizable where the supervisor "was personally involved in the constitutional deprivation or a sufficient causal connection exists between the supervisor's unlawful conduct and the constitutional

violation." *Lolli v. Cnty. of Orange*, 351 F.3d 410, 418 (9th Cir. 2003). Thus, supervisors may be held liable pursuant to Section 1983 as follows:

> (1) for setting in motion a series of acts by others, or knowingly refusing to terminate a series of acts by others, which they knew ore reasonably should have known would cause others to inflict constitutional injury; (2) for culpable action or inaction in training, supervision, or control of subordinates; (3) for acquiescence in the constitutional deprivation by subordinates; or (4) for conduct that shows a 'reckless or callous indifference to the rights of others.'

*Moss v. U.S. Secret Service*, 675 F.3d 1213, 1231 (9th Cir. 2012) *reversed on other grounds in Ashcroft v. al-Kidd*, 131 S. Ct. 2074 (2011) (quoting *al-Kidd v. Ashcroft*, 580 F.3d 949, 965 (9th Cir. 2009)); *see also Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011) ("We therefore conclude that a plaintiff may state a claim against a supervisor for deliberate indifference based upon the supervisor's knowledge of and acquiescence in unconstitutional conduct by his or her subordinates.").

Here, the complaint does not allege facts showing that Defendant Davis was personally involved in any of the complained-of conduct. Plaintiff alleges that each of the Defendants

> personally participat[ed] in the unlawful conduct or acting jointly or conspiring with others who did so; by authorizing, acquiescing in or setting in motion policies, plans or actions that led to the unlawful conduct; by failing to take action to prevent the unlawful conduct; by failing and refusing with deliberate indifference to Plaintiff's rights to initiate and maintain adequate training and supervision; and by ratifying the unlawful conduct that occurred by agents and officers under their direction and control, including failing to take remedial or disciplinary action.

(Doc. 5, ¶ 27.) However, these allegations are too conclusory and devoid of facts to show how Defendant Davis was personally involved in the events of September 13, 2010, nor does Plaintiff indicate how Defendant Davis is liable in her supervisory capacity. Absent factual allegations in this regard, any claim against Defendant Davis in her individual capacity is not cognizable.

### 8.   Claims Against Defendant Officer Woods and Does 1 through 20

Plaintiff fails to allege each Defendant's conduct or participation in the events. Although Plaintiff asserts that Officer Woods entered his residence during the course of the search, Plaintiff does not make any other allegations about Officer Woods' conduct during the course of the search or arrest.

With regard to the twenty John Doe defendants Plaintiff names, the liability of "John Doe" defendants must be properly alleged. A plaintiff may use "Doe" designations to refer to defendants whose names are unknown; however, he must number them in the complaint, e.g., "John Doe 1," "John Doe 2," or otherwise distinguish each defendant so that every John Doe refers to a different specific person. Plaintiff must also identify how each defendant, including those named as Doe, is liable for a constitutional violation. *See Dempsey v. Schwarzenegger*, No. C 09-2921 JSW (PR), 2010 WL 1445460, at *2 (N.D. Cal. Apr. 9, 2010).

Plaintiff names twenty "Doe defendants" in this action without distinguishing each individual or explaining how they participated in the alleged constitutional violations. Plaintiff identifies the officer who deployed the "flash-bang" device as Doe Defendant II (Doc. 5, ¶¶ 36, 38, 50, 126, 127), but does not identify Doe Defendant 1, or any of the other Doe Defendants. Plaintiff should allege specific acts attributable to each of the Doe Defendants, such as "John Doe 1 did X" and John Doe 2 and 3 did Y." *Alexander v. Tilton*, No. 1:07-cv-00759-LJO-DLB, 2009 WL 464486, *5 (E.D. Cal. Feb. 24, 2009).

**D.    Amended Complaint Must Be Complete in Itself Without Reference to Any Prior Pleading**

While the Court is mindful that Plaintiff is proceeding pro se, even construing the allegations in the complaint liberally, there is no cognizable claim. *See Karim-Panahi v. L.A. Police Dept.*, 839 F.2d 621, 623 (9th Cir. 1988) (court must construe the pleadings liberally and afford plaintiff any benefit of the doubt). Therefore, Plaintiff's complaint is dismissed without prejudice. However, Plaintiff will be given an opportunity to amend the deficiencies in the complaint.

Plaintiff is advised that Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading. As a general rule, an amended complaint supersedes the original complaint. *See Lacey v. Maricopa County*, __ F.3d __, Nos. 09-15806, 09-15703, 2012 WL 3711591, at *1 n. 1 (9th Cir. Aug 29, 2012). Once Plaintiff files an amended complaint, the original pleading no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently

alleged. If Plaintiff fails to file an amended complaint or fails to cure the deficiencies identified above, the Court will recommend that the complaint be dismissed with prejudice.

### IV.  CONCLUSION

For the reasons set forth above, Plaintiff's complaint is DISMISSED, and he is GRANTED thirty (30) days LEAVE TO AMEND.

IT IS SO ORDERED.

**Dated:   October 3, 2012**              /s/ Sheila K. Oberto
                                        UNITED STATES MAGISTRATE JUDGE