1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

CAIN A. GONZALES,

                    Plaintiff,

        v.

CITY OF CLOVIS, et al.,

                    Defendants.

_____/

CASE NO. 1:12-cv-00053-AWI-SKO

**ORDER DISMISSING PLAINTIFF'S SECOND AMENDED COMPLAINT AND GRANTING 30 DAYS LEAVE TO AMEND**

(Docket No. 7)

## I.   INTRODUCTION

On January 11, 2012, Plaintiff Cain Gonzales[1] ("Plaintiff") filed a complaint against the City of Clovis; the Clovis Police Department; and the Chief of the Clovis Police Department, Janet Davis. (Doc. 1.)  The complaint was dismissed, and Plaintiff filed a First Amended Complaint ("FAC") on May 14, 2012, naming an additional defendant, Officer Woods ("Defendant Officer Woods") and DOES 1 through 20.  (Doc. 5.)  Plaintiff's FAC was dismissed on October 3, 2012, and Plaintiff filed a Second Amended Complaint ("SAC") on November 2, 2012, again naming all the foregoing

---

[1] In Plaintiff's initial complaint, he spelled his name "Cain Gonzalez" on the first page, but the caption identifies him as "Cain Gonzales" and the substance of the complaint referred to "Cain Gonzales."  In subsequent amendments, Plaintiff has spelled his name "Cain Gonzalez" and "Cain Gonzales."  It is not clear which is the correct spelling.

defendants and adding DOES 1 through 75. (Doc. 7.) For the reasons set forth below, Plaintiff's SAC is dismissed with leave to amend.

## II.  FACTUAL BACKGROUND

Plaintiff alleges that on September 13, 2010, police officers with the Clovis Police Department executed a search warrant at his residence, which resulted in charges against Plaintiff for possession of a controlled substance. (Doc. 7, ¶ 15.) Officers, including Defendant Officer Woods, entered Plaintiff's residence via the backdoor; the Officers failed to announce themselves by knocking, state who they were, or the purpose of their presence. (Doc. 7, ¶ 16.) During the course of the search, an officer deployed a "flash-bang grenade" causing Plaintiff second- and third-degree burns. (Doc. 7, ¶¶ 17, 22.)[2] No warning was provided by the officers before the grenade was detonated. (Doc. 7, ¶ 22.) Plaintiff asserts that unidentified officers present during the search destroyed some of Plaintiff's property, including gold jewelry, coins, television sets, laptop computers, and flat-screen computer monitors. (Doc. 7, ¶ 19.) What the officers did not take, they destroyed and smashed. (Doc 7, ¶ 19.)

Following the search of his residence, Plaintiff was arrested and transported to the Clovis Police Department where he was detained for fifteen hours before being transported to the Fresno Community Hospital, even though he was severely burned and experienced pain and suffering from the grenade. (Doc. 7, ¶ 25.) Plaintiff was treated at the hospital for approximately four hours and was returned to the Fresno County Jail where he was booked. (Doc. 7, ¶ 25.)

After being booked, Plaintiff was released from custody on his own recognizance due to overcrowding of the jail and downsizing. (Doc. 7, ¶ 41.) However, during the "book and release process," Plaintiff "posted [bail] and while the bail was posted, the jail staff never notified the bonds[man] that his client was release[d] on his own recognizance." (Doc. 7, ¶ 29.)

At some point after his release, because the Fresno County Sheriff's office had failed to mention to the bondsman that Plaintiff was released on his own recognizance, Plaintiff was returned

---

[2] A flash-bang device "is a light/sound diversionary device designed to emit a brilliant light and loud noise upon detonation. Its purpose is to stun, disorient, and temporarily blind its targets, creating a window of time in which police officers can safely enter and secure a potentially dangerous area." *Boyd v. Benton Cnty.*, 374 F.3d 773, 776 (9th Cir. 2004).

to jail by the bondsman because he believed Plaintiff had "skipped bail." (Doc. 7, ¶ 30.)   Plaintiff was held for six hours, and then again released on his own recognizance.

After his release from jail, Plaintiff called the police department to report that some of his personal property had been "stolen" while he was detained after his arrest on September 13, 2010. (Doc. 7, ¶ 31.) "While making that report, the police arrested [Plaintiff] again and charged him with receiving stolen property."  (Doc. 7, ¶ 31.)   Eventually, all charges "[were] dropped, (no charge would be filed at that time), by the [Clovis Police Department]."  (Doc. 7, ¶ 33.)

Prior to these incidents with the Clovis Police Department, in December 2006, Plaintiff filed a complaint against the City of Fresno, Police Chief Jerry Dyer, the County of Madera, and Madera County Sheriff John Anderson asserting, *inter alia*, a claim under 42 U.S.C. § 1983. (*Gonzalez v. City of Fresno, et al.*, 1:06-cv-01751-OWW-TAG).   (*See* Doc. 7, ¶ 13.)   Plaintiff claims that the Defendants named in this case were aware of the *Gonzalez v. City of Fresno* case and that they arrested him as alleged above in an attempt to punish and intimidate Plaintiff and to "thwart Plaintiff's efforts to seek redress of his prior lawsuit [*Gonzalez v. City of Fresno*] against the City of Fresno, Chief Dyer and to cause him physical harm and emotional anguish." (Doc. 7, ¶ 13.) Plaintiff asserts that Defendants[3] actions against him, including "unlawful arrests, false prosecutions, police harassment, and excessive use of force," were performed "in an effort to impede and deter Plaintiff from exercising his constitutional rights and to punish him for exercising those rights."  (Doc. 7, ¶ 13.)

## III.   DISCUSSION

### A.   Screening Standard

In cases where the plaintiff is proceeding *in forma pauperis*, the Court is required to screen each case and shall dismiss the case at any time if the Court determines that the allegation of poverty is untrue, or the action or appeal is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2).  If the Court determines that the complaint fails to state a claim, leave to

---

[3] Plaintiff refers generically to "Defendants" throughout the complaint.  Where a defendant is not specifically identified, reference to "Defendants" in this order is a reference to all the named Defendants collectively.

amend may be granted to the extent that the deficiencies of the complaint can be cured by amendment. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc).

**B.   Legal Standard**

In determining whether a complaint fails to state a claim, the Court applies the same pleading standard used under Federal Rule of Civil Procedure 8(a).   Under Rule 8(a), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).   "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).   "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).   "[A] complaint [that] pleads facts that are 'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).   Further, although a court must accept as true all factual allegations contained in a complaint, a court need not accept a plaintiff's legal conclusions as true. *Id.*   "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (quoting *Twombly*, 550 U.S. at 555).

**C.   Claims Pursuant to Section 1983**

Plaintiff states his first two causes of action pursuant to 42 U.S.C. § 1983. Section 1983 of Title 42 of the United States Code does not provide substantive rights; rather, it is "a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (citations and internal quotation marks omitted).   In pertinent part, Section 1983 states as follows:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in any action at law, suit in equity, or other proper proceeding for redress . . .

42 U.S.C. § 1983.

To sufficiently plead a cognizable Section 1983 claim, a plaintiff must allege facts from which it may be inferred that (1) he was deprived of a federal right, and (2) a person who committed the alleged violation acted under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Williams v. Gorton*, 529 F.2d 668, 670 (9th Cir. 1976). Additionally, a plaintiff must allege that he suffered a specific injury and show a causal relationship between the defendant's conduct and the injury suffered. *See Rizzo v. Goode*, 423 U.S. 362, 371-72 (1976).

### 1.    First Cause of Action for Violation of Constitutional Rights Under Section 1983

Plaintiff's SAC sets forth three causes of action; however, under each "cause of action," Plaintiff appears to plead multiple claims. Before any claims may be found to be cognizable, Plaintiff must separate each specific claim he wishes to pursue, identify which Defendants relate to each particular claim, and identify the Constitutional right implicated by each claim. Plaintiff's allegations are considered below and are separated to the extent they appear to state separate claims.

### a.    First Amendment Claim for Retaliation

Plaintiff claims that his treatment by Defendants in repeatedly arresting him was motivated by Defendants' desire to retaliate against him "for having filed and pursued a claim for civil rights violations and assault and battery in *Gonzalez v. City of Fresno*, 1:06-cv-01751-OWW-TAG [(E.D. Cal)]." (Doc. 7, ¶ 13.) Plaintiff alleges that the Defendants had no lawful basis for their actions in arresting him on September 13, 2010, or for his subsequent second arrest.

A retaliation claim may be stated where a plaintiff alleges retaliation by state actors for the exercise of his First Amendment rights. *See Mt. Healthy City Bd. of Educ. v. Doyle* ("*Mt. Healthy*"), 429 U.S. 274, 283-84 (1977). Retaliation is not expressly referred to in the Constitution, but it is actionable because retaliatory actions may tend to chill an individual's exercise of constitutional rights. *See Perry v. Sindermann*, 408 U.S. 593, 597 (1972). To adequately state a retaliation claim, the plaintiff must plead facts indicating that the type of activity in which plaintiff was engaged was protected by the First Amendment and that the protected conduct was a substantial or motivating factor for the alleged retaliatory acts. *See Mt. Healthy*, 429 U.S. at 287. Retaliation is not adequately pled by simply pointing to adverse activity by the defendant after protected speech. Instead, the plaintiff must set forth facts demonstrating a nexus between the two. *See Huskey v. City of San*

5

1  *Jose*, 204 F.3d 893, 899 (9th Cir. 2000) (retaliation claim cannot rest on the logical fallacy of *post*

2  *hoc, ergo propter hoc*, i.e., "after this, therefore because of this").

3      Plaintiff's retaliation claim is not cognizable because there are no facts alleged that suggest

4  a nexus between the filing of Plaintiff's complaint in *Gonzalez v. City of Fresno*, Case No. 1:06-cv-

5  01751-OWW-TAG and the complained-of-actions of Defendants here in searching Plaintiff's house

6  and arresting him twice.  While Plaintiff's arrests occurred after the civil action in *Gonzalez v. City*

7  *of Fresno* was filed, a temporal relationship between these events by itself is not sufficient to

8  establish a nexus.  *Huskey*, 204 F.3d at 899.  To state a cognizable First Amendment claim for

9  retaliation, Plaintiff must plead facts showing a nexus between the complained-of actions of

10  Defendants and the suit Plaintiff filed in *Gonzalez v. City of Fresno*.

11      Plaintiff has already been advised of these deficiencies, but has failed to cure them in his

12  SAC.  To the extent that Plaintiff wishes to pursue a retaliation claim against Defendants, he must

13  plead a specific claim for retaliation that is separately identified from all his other claims, identify

14  the constitutional right that has allegedly been violated, and identify against which Defendants the

15  claim is stated and each Defendant's role in the alleged conduct.  Moreover, Plaintiff must allege

16  facts showing a nexus between the complained of conduct and the suit filed by Plaintiff in *Gonzalez*

17  *v. City of Fresno*.  If Plaintiff fails to cure these deficiencies outlined above, this claim will be

18  recommended for dismissal without leave to amend.

19          **b.    Fourth Amendment Claims**

20          **(i)    Failure to Knock and Announce**

21      Plaintiff alleges that, when officers entered his residence pursuant to a search warrant, the

22  officers did not announce their presence, state who they were or the purpose of their presence.  (Doc.

23  7, ¶ 16.)[4]

24      In general, the Fourth Amendment's protection against unreasonable searches and seizures

25  requires law enforcement personnel to knock on the door and announce their presence to provide

26

27      [4] In an apparent contradiction, Plaintiff alleges that he was sleeping at the time Defendants entered his residence,
   thus it is difficult to understand how Plaintiff perceived Defendants' failure to knock and announce their entrance if he
28  was sleeping at the time.  (*See* Doc. 7, ¶ 23.)

residents an opportunity to open the door prior to entering a dwelling. *Wilson v. Arkansas*, 514 U.S. 927, 931-32 (1995).   However, the Supreme Court has explained that the "Fourth Amendment's flexible requirement of reasonableness should not be read to mandate a rigid rule of announcement that ignores countervailing law enforcement interests . . . . [T]he common-law principle of announcement was never stated as an inflexible rule requiring announcement under all circumstances." *Id.* at 934.

To the extent that Plaintiff is challenging the reasonableness of the search in this regard, Plaintiff should set forth those allegations as a separate "claim" or a "count" and identify the Constitutional Amendment under which the claim is brought to give Defendants fair notice of Plaintiff's claim and the ground upon which it rests. *Twombly*, 550 U.S. 544, 554-55.   To be adequate, a claim must set out who is being sued, for what relief, and on what theory, with enough detail to guide discovery. *Bautista v. L.A. Cnty.*, 216 F.3d 837, 840-41 (9th Cir. 2000).

### (ii)   Invalid Search Warrant

Plaintiff's claim that both his arrests and the search of his residence were unconstitutional are blended together in his complaint.   Plaintiff alleges that on September 13, 2010, the Clovis Police Department executed a search warrant at his residence, which resulted in charges against Plaintiff for possession of a controlled substance. (Doc. 7, ¶ 15.)   Plaintiff alleges that he was "unreasonably and unlawfully arrested and contends that [there] was no probable cause to arrest him because the warrant was facially invalid because it contained the wrong name and therefore [Plaintiff] is challenging the constitutionality of the search of his residence based on the faulty warrant." (Doc. 7, ¶ 35.)   Plaintiff also asserts that "Defendants omitted any mention in their police reports or the return on the search warrant that the name on the search warrant was incorrect as reported [on] KFSN Channel 30[;] [Channel 30 reported that] a person named Ascencio Cain [was] arrested for possession of methamphetamine." (Doc. 7, ¶ 24.)

Generally, searches do not violate the Fourth Amendment if they are based on probable cause and executed pursuant to a valid search warrant. *Katz v. United States*, 389 U.S. 347, 357 (1967). A valid warrant must describe the places that officers may search and the types of items that they may seize with particularity. *Dawson v. City of Seattle*, 435 F.3d 1054, 1064 (9th Cir. 2006).   "The

description must be specific enough to enable the person conducting the search reasonably to identify the things authorized to be seized." *United States v. Spilotro*, 800 F.2d 959, 963 (9th Cir. 1986).

Here, Plaintiff fails to provide any additional details about the search warrant that explains its parameters such as who was to be searched or what items were to be seized pursuant to the warrant. Plaintiff does not state whose name was on the search warrant, and it is unclear how an incorrect name invalidated or otherwise rendered the search unconstitutional. Moreover, Plaintiff has pled the allegations regarding his arrests and the September 13, 2010, search together in a manner that renders it difficult to interpret what claims Plaintiff wishes to pursue and against which Defendants. To the extent Plaintiff wishes to pursue a Section 1983 claim for an unconstitutional search pursuant to the Fourth Amendment, such a claim should be set forth separately from other claims Plaintiff intends to pursue under the Fourth Amendment. *Bautista*, 216 F.3d at 840-41 ("Experience teaches that, unless cases are pled clearly and precisely, issues are not joined, discovery is not controlled, the trial court's docket becomes unmanageable, the litigants suffer, and society loses confidence in the court's ability to administer justice.") quoting *Anderson v. Dist. Bd. of Trustees*, 77 F.3d 364, 367 (11th Cir. 1996))). Plaintiff should also provide factual details to explain how the search was unconstitutional given Plaintiff's allegation that it was performed pursuant to a search warrant. If Plaintiff is asserting that the warrant is facially defective, he should provide factual allegations regarding how the warrant was facially defective.

### (iii)   Excessive Force

It appears that Plaintiff is attempting to state a Fourth Amendment claim for excessive force based on Defendants' use of a flash-bang grenade. Plaintiff alleges the following with respect to Defendants' deployment of a "flash-bang grenade":

> 22.   One as-yet unidentified officer tossed a flash-bang grenade at the Plaintiff, which caused the second and third-degree burns to [Plaintiff's] body. This occurred approximately (20) twenty minutes to (30) minutes after Defendant [Officers] entered Plaintiff's residency by the backdoor. Defendant [Officers] did not warn or give warnings prior to deployment of the device. The lack of warnings from the Defendants before deploying the flash-bang device minutes after Defendant [Officers] entered the residence was unreasonable.

> 23.   Plaintiff[,] at the time the device was deployed or just prior to deployment of the device, Plaintiff was asleep on his mattress. Plaintiff was asleep when Defendant [Officers] entered the residence and was asleep until minutes after

1  which time Plaintiff awoke and then an unknown officer deployed the device,
2  which burned Plaintiff.

3    Claims asserting officers used excessive force during the course of an arrest, investigatory

4  stop, or other seizure are analyzed under the Fourth Amendment's prohibition against unreasonable

5  seizures. *Graham v. Connor*, 490 U.S. 386, 394 (1989). Officers may only use such force as is

6  objectively reasonable under the circumstances. *Id*. at 397; *see also Jackson v. City of Bremerton*,

7  268 F.3d 646, 651 (9th Cir. 2001). The deployment of a flash-bang device during a search may be

8  unreasonable and constitute excessive force under certain circumstances. *Boyd*, 374 F.3d at 779.

9  In *Boyd*, the Ninth Circuit held that, "given the inherently dangerous nature of the flash-bang device,

10 it cannot be a reasonable use of force under the Fourth Amendment to throw it 'blind' into a room

11 occupied by innocent bystanders absent a strong government interest, careful consideration of

12 alternatives and appropriate measures to reduce the risk of injury." *Id*. The appellate court held that

13 the use of the flash-bang device in *Boyd* did not meet those requirements and thus established a

14 Fourth Amendment violation.

15   Here, Plaintiff alleges that the flash-bang device was deployed in his residence by Defendants

16 without warning. (Doc. 7, ¶¶ 22-23.) Plaintiff alleges that he was asleep at the time the device was

17 deployed, and he was burned as a result of the deployment. This claim, however, is insufficient. It

18 is not set forth as a separate claim, Plaintiff fails to identify the constitutional right that was allegedly

19 violated, and Plaintiff fails to identify the Defendants who were purportedly responsible. To be

20 adequate, a claim must set out who is being sued, for what relief, and on what theory, with enough

21 detail to guide discovery. *Bautista v. L.A. Cnty.*, 216 F.3d 837, 840-41 (9th Cir. 2000).

22   Additionally, the allegations are extremely limited and provide little information about the

23 circumstances under which the device was deployed. Although Plaintiff alleges no warning prior

24 to deployment was given, Plaintiff also alleges he was sleeping prior to deployment of the device and

25 ostensibly would not have been cognizant of any warnings issued. Plaintiff also fails to provide a

26 clear picture of the events, the number of officers involved, and where the device was deployed such

27 that Plaintiff was burned. *See Twombly*, 550 U.S. at 555 (while detailed allegations are not required,

28 "[f]actual allegations must be enough to raise a right to relief above the speculative level").

### (iv)   Property Destruction During Search

Plaintiff alleges that during the search of his residence, unknown Defendant officers "ransacked the residence, destroying numerous expensive items of personal property, including but not limited to gold jewelry, coins, laptops, computers, flat screen monitors, and flat screen TV's. What Defendant [Officers] did not take[,] they destroyed and smashed." (Doc. 7, ¶ 19.)

The Ninth Circuit has explained that the "test of what is necessary to 'execute a warrant effectively' is reasonableness." *San Jose Charter of Hells Angels Motorcycle Club v. City of San Jose* ("*Hells Angels*"), 402 F.3d 962, 971 (9th Cir. 2005). "An officer's conduct in executing a search warrant is subject to the Fourth Amendment's mandate of reasonableness from the moment of the officer's entry until the moment of departure." *Id.* (quoting *Lawmaster v. Ward*, 125 F.3d 1341, 1349 (10th Cir. 1997)). "[U]necessarily destructive behavior, beyond that necessary to execute [the] warrant effectively, violates the Fourth Amendment." *Hells Angeles*, 402 F.3d at 974 (quoting *Liston v. Cnty. of Riverside*, 120 F.3d 965, 979 (9th Cir. 1997)).

Plaintiff asserts that the search was unreasonable and unconstitutional due to the unnecessary destruction of property. Plaintiff contends that the destruction of property was unnecessary "given the situation." (Doc. 7, ¶ 20-21.) This claim is insufficient for two reasons. First, the allegations about the manner of the search are not set forth as a separate claim for violation of Plaintiff's Fourth Amendment rights. Second, there are no factual details about the search other than bare allegation that certain property of Plaintiff's was destroyed or confiscated during the course of the search. While Plaintiff conclusorily states that the destruction of property was unnecessary "given the situation," he does not plead any facts establishing the nature of the situation. Such conclusory allegations are insufficient to state a cognizable claim. *Twombly*, 550 U.S. at 555.

### (v)   Wrongful Arrest

Plaintiff alleges that he was unreasonably and unlawfully arrested because the officers lacked probable cause to arrest him. (Doc. 7, ¶ 35.) Plaintiff states that he is challenging the reasonableness of his arrest on September 13, 2010 ("first arrest"), and his arrest at some unalleged later date following his release from Fresno County Jail when he complained of his destroyed property ("second arrest"). (Doc. 7, ¶ 35.) At the time of his first arrest, Plaintiff alleges that officers had no

probable cause for arrest because they had no "proof or specificity" that Plaintiff had received stolen property.  (Doc. 7, ¶ 32.)  At the time of his second arrest, Plaintiff alleges that officers lacked probable cause because a "call from an anonymous person informing the [Clovis Police Department] that Plaintiff had a gun and sold drugs lacks the necessary greater standard for probable cause to exist."  (Doc. 7, ¶ 38.)

It is well-settled that, beyond a few narrow exceptions, a police officer must have either an arrest warrant or probable cause to arrest.  "[I]t is clearly established that an arrest without probable cause violates a person's Fourth Amendment rights."  *Knox v. Southwest*, 124 F.3d 1103, 1107 (9th Cir. 1997).  Probable cause to make an arrest exists if the facts and circumstances within the arresting officer's knowledge were "sufficient to warrant a prudent man in believing that the [arrestee] had committed or was committing an offense."  *Beck v. Ohio*, 379 U.S. 89, 91 (1964).  "Probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity."  *Illinois v. Gates*, 462 U.S. 213, 243-44 n.13 (1983).

While Plaintiff alleges that he is challenging the constitutionality of two arrests, he only pleads facts with respect to the September 13, 2010, arrest.  Specifically, while Plaintiff asserts that he was arrested a second time and charged with receiving stolen property, no other facts, such as the date of the second arrest, were pled.  (*See* Doc. 7, ¶ 31.)  As it pertains to his September 13, 2010, arrest, the claim is blended with his other Fourth Amendment claims.  Plaintiff references a "warrant," but it is difficult to ascertain whether Plaintiff is describing a search warrant or an arrest warrant.  Thus, it is not clear whether Plaintiff is alleging he was arrested on September 13, 2010, pursuant to an invalid arrest warrant or he was arrested with no warrant.  The sparse factual allegations regarding what appears to be a wrongful arrest claim render it non-cognizable.

### c.  Fourteenth Amendment Claim for Deliberate Indifference to Serious Medical Need

Plaintiff also appears to assert a Fourteenth Amendment claim for deliberate indifference to a serious medical need.  As Plaintiff was not incarcerated at the time of the alleged incidents, his claim is analyzed under the Due Process Clause of the Fourteenth Amendment.  *Jones v. Blanas*, 393 F.3d 918, 931 (9th Cir. 2004) (the more protective standard of the Fourteenth Amendment

applies when a detainee has not been convicted of a crime); *Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002) (because plaintiff "had not been convicted of a crime, but had only been arrested, his rights derive from the Due Process Clause rather than the Eighth Amendments' protection against cruel and unusual punishment").   At a minimum, the Fourteenth Amendment imposes the same duty to provide adequate medical care to those detained as that imposed by the Eighth Amendment for incarcerated individuals:  "Persons in custody ha[ve] the established right to not have officials remain deliberately indifferent to their serious medical needs." *Gibson*, 290 F.3d at 1187.

     The two-part test for deliberate indifference requires the plaintiff to show (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds, WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) (internal quotation marks omitted)).   Deliberate indifference is shown by a "purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference." *Id.* (citing *McGuckin*, 974 F.2d at 1060) (internal quotation marks omitted).   Where a prisoner is alleging a delay in receiving medical treatment, the delay must have led to further harm for the prisoner to make a claim of deliberate indifference to serious medical needs. *See Berry v. Bunnell*, 39 F.3d 1056, 1057 (9th Cir. 1994).

     Plaintiff alleges that he had a serious medical need to have his burns treated, and the officers' delay in providing him treatment "resulted in further significant injury and the unnecessary and wanton infliction of pain." (Doc. 7, ¶ 26.)  Plaintiff also asserts that Defendants were aware of his injuries shortly after the device was deployed, yet they delayed 15 hours before providing him with medical care. (Doc. 7, ¶ 27.) While Plaintiff provides no allegations how Defendants became aware of his injuries, e.g., he told them of his injuries or the injuries were visible and obvious, Plaintiff's allegations are generally sufficient to state a claim for deliberate indifference.   However, Plaintiff has not set forth these allegations as a separate claim from his other allegations regarding violation

of Plaintiff's Fourth Amendment rights. It is Plaintiff's responsibility to set forth his claims in a manner that complies with Rule 8's requirements and provides Defendants with adequate notice of the claims against them. *See Twombly*, 550 U.S. at 555. Thus, to the extent Plaintiff wishes to pursue a claim for deliberate indifference based on delay in providing treatment for a serious medical need, he should plead this claim separately from his other claims, identify the constitutional right that was allegedly violated, and identify which Defendants participated in the complained-of conduct. *Bautista*, 216 F.3d at 840-41.

### 2. Second Cause of Action – *Monell* Claim

Plaintiff alleges, pursuant to Section 1983, that the City of Clovis "negligently" hired, trained, staffed, and supervised Defendant Officers pursuant to a policy or custom and such negligence was the cause of Plaintiff's injuries. (Doc. 7, ¶ 44.)

### a. Legal Framework

Municipalities, such as the City of Fresno, are considered "persons" under 42 U.S.C. § 1983 and therefore may be liable for causing a constitutional deprivation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978); *Long v. Cnty. of L.A.*, 442 F.3d 1178, 1185 (9th Cir. 2006). A municipality, however, "cannot be held liable *solely* because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under [Section 1983] under *respondeat superior* theory." *Monell*, 436 U.S. at 691; *see Long*, 442 F.3d at 1185; *Ulrich v. City & Cnty. of S.F.*, 308 F.3d 968, 984 (9th Cir. 2002). Liability only attaches where the municipality itself causes the constitutional violation through "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Monell*, 436 U.S. at 694; *Ulrich*, 308 F.3d at 984.

Municipal liability may be premised on: (1) conduct pursuant to an expressly adopted official policy; (2) a longstanding practice or custom which constitutes the "standard operating procedure" of the local government entity; (3) a decision of a decision-making official who was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision; or (4) an official with final policy making authority either delegating that authority to or ratifying the decision of, a subordinate. *See Price v. Sery*,

513 F.3d 962, 966 (9th Cir. 2008); *Lytle v. Carl*, 382 F.3d 978, 982 (9th Cir. 2004); *Ulrich*, 308 F.3d at 984-85; *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).  A "policy" is a "deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Fogel v. Collins*, 531 F.3d 824, 834 (9th Cir. 2008); *Long*, 442 F.3d at 1185.  A "custom" for purposes of municipal liability is a "widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law." *St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988); *L. A. Police Protective League v. Gates*, 907 F.2d 879, 890 (9th Cir. 1990); *see also Bouman v. Block*, 940 F.2d 1211, 1231-32 (9th Cir. 1991).  In other words, a custom is a widespread and longstanding practice that "constitutes the standard operating procedure of the local government entity." *Trevino*, 99 F.3d at 918 (quoting *Gillette v. Delmore*, 979 F.2d 1342, 1346-47 (9th Cir. 1992)).  "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino*, 99 F.3d at 918; *see also McDade v. West*, 223 F.3d 1135, 1141 (9th Cir. 2000); *Thompson v. Los Angeles*, 885 F.2d 1439, 1443-44 (9th Cir. 1989).  After proving one of the above methods of liability, the plaintiff must show that the challenged municipal conduct was both the cause in fact and the proximate cause of the constitutional deprivation.  *See Harper v. City of L.A.*, 533 F.3d 1010, 1026 (9th Cir. 2008); *Trevino*, 99 F.3d at 918.

A municipality's failure to train its employees may create Section 1983 liability where the "failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989); *Long*, 442 F.3d at 1186; *Lee v. City of L.A.*, 250 F.3d 668, 681 (9th Cir. 2001).  "The issue is whether the training program is adequate and, if it is not, whether such inadequate training can justifiably be said to represent municipal policy." *Long*, 442 F.3d at 1186.  A plaintiff alleging a failure to train claim must show: (1) he was deprived of a constitutional right, (2) the municipality had a training policy that "amounts to deliberate indifference to the constitutional rights of the persons with whom [its police officers] are likely to come into contact"; and (3) his constitutional injury would have been avoided had the

municipality properly trained those officers. *Blankenhorn v. City of Orange*, 485 F.3d 463, 484 (9th Cir. 2007) (internal citations and quotation marks omitted); *Lee*, 250 F.3d at 681.  "Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *City of Canton*, 489 U.S. at 389; *Long v. City & Cnty. of Honolulu*, 511 F.3d 901, 907 (9th Cir. 2007).  A municipality is "deliberately indifferent" when the need for more or different action "is so obvious, and the inadequacy [of the current procedure] so likely to result in the violation of constitutional rights, that the policy makers . . . can reasonably be said to have been deliberately indifferent to the need." *City of Canton*, 489 U.S. at 390; *Lee*, 250 F.3d at 682.  A pattern of tortious conduct, despite the existence of a training program, or "highly predictable" constitutional violations due to a "failure to equip law enforcement officers with specific tools to handle recurring situations," are circumstances in which liability for failure to train may be imposed. *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 407-10 (1997); *Long*, 442 F.3d at 1186-87.  However, "adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the [municipality] liable." *City of Canton*, 489 U.S. at 391; *see also Merritt v. Cnty. of L.A.*, 875 F.2d 765, 770 (9th Cir. 1989); *McDade*, 223 F.3d at 1141.

Allegations of *Monell* liability will be sufficient for purposes of Federal Rule of Civil Procedure 12(b)(6) where they:  (1) identify the challenged policy/custom; (2) explain how the policy/custom is deficient; (3) explain how the policy/custom caused the plaintiff harm; and (4) reflect how the policy/custom amounted to deliberate indifference, i.e., show how the deficiency involved was obvious and the constitutional injury was likely to occur. *Young v. City of Visalia*, 687 F. Supp. 2d 1141, 1148-50 (E.D. Cal. 2009)*; see also Jackson v. Cnty. of San Diego*, No. 09-cv-120-WQH-POR, 2009 WL 3211402, at *8 (S.D. Cal. Sept. 29, 2009); *cf. Lee*, 250 F.3d at 682.

### b.    Analysis

Here, Plaintiff alleges that the City of Clovis "negligently hired, trained, staffed, and supervised the Defendant [Officers] and that the negligent act or omissions of these Defendants, and each of them, were a proximate legal cause of the injuries to Plaintiff." (Doc. 7, ¶ 44-46.)  However,

negligence allegations do not state a *Monell* claim because negligence does not amount to deliberate indifference, which is required to state a claim under *Monell*.  *City of Canton*, 489 U.S. at 390 (municipal liability exists only where the municipality acts with "deliberate indifference" to the rights of the plaintiff); *see also Dougherty v. City of Covina*, 654 F.3d 892, 901-02 (9th Cir. 2011) (mere negligence in training or supervision does not give rise to a *Monell* claim).

In addition to the negligence allegations, Plaintiff also alleges that the lack of training in the deployment of "flash-bang" devices and inadequate supervision and control in such deployment amounted to deliberate indifference.  (Doc. 7, ¶ 46.)  Plaintiff asserts that, due to the nature of the incendiary device and the injuries that such a device could potentially inflict, the necessity of proper training should have been obvious and a failure to train was tantamount to deliberate indifference.  (Doc. 7, ¶ 46.)  Although Plaintiff's failure to train allegations include an averment that Defendants acted with deliberate indifference, the inclusion of allegations regarding negligence renders the claim vague and inconsistent.  As it is possible these inconsistences could be cured by amendment, allowing Plaintiff another opportunity to amend is not futile.  However, continued failure to address the deficiencies of this claim will result in a recommendation that the claim be dismissed with prejudice.

### D.   Third Cause of Action – False Imprisonment

Plaintiff's third cause of action is a state law claim for false imprisonment.[5]  The tort of false imprisonment involves: "(1) the nonconsensual, intentional confinement of a person, (2) without lawful privilege, and (3) for an appreciable period of time, however brief." *Easton v. Sutter Coast Hosp.*, 80 Cal. App. 4th 485, 496 (2000).  "Under California law, the torts of false arrest and false imprisonment are not separate torts, as false arrest is 'but one way of committing a false imprisonment.'" *Watts v. Cnty. of Sacramento*, 256 F.3d 886, 891 (9th Cir. 2001) (quoting *Asgari v. City of Los Angeles*, 15 Cal. 4th 744 (1997)).  "A cause of action for false imprisonment based on unlawful arrest will lie where there was an arrest without process followed by imprisonment." *Watts*, 256 F.3d at 891 (citing *City of Newport Beach v. Sasse*, 9 Cal. App. 3d 803 (1970)).

---

[5] Unlike Plaintiff's first causes of action, his third cause of action is not stated under Section 1983.

16

Plaintiff was allegedly arrested twice without probable cause or a warrant, but Plaintiff fails to allege the date of his second arrest. Plaintiff's first arrest took place on September 13, 2010. The cause of action for false imprisonment accrues when the plaintiff is released from confinement, *see Milliken v. City of South Pasadena*, 96 Cal. App. 3d 834, 840 (1979), and the applicable statute of limitations requires that such an action be brought within one year of that date, Cal. Code Civ. Proc. § 340(c). Plaintiff alleges that, following his arrest on September 13, 2010, he was held for 15 hours prior to being taken to the hospital for treatment of his burns. Thereafter, he was held for an additional six hours before being released and no charges were filed. (Doc. 7, ¶¶ 27-30.) Thus, Plaintiff's claim for false imprisonment apparently accrued by September 14, 2010, but Plaintiff did not file his complaint until January 11, 2012, more than a year after his claim for alleged false imprisonment accrued. Therefore, Plaintiff's claim for false imprisonment appears barred by the statute of limitations. To the extent Plaintiff attempts to amend this claim on the set of facts currently alleged, such a claim will be recommended for dismissal with prejudice as barred by the statute of limitations. *See Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006) (where the expiration of the statute of limitations is apparent on the face of the complaint, dismissal under Federal Rule 12(b)(6) is appropriate).[6]

**E.     Claims Against Defendant Clovis Police Chief Janet Davis**

Plaintiff names the Chief of the Clovis Police Department as a Defendant in both her individual capacity and official capacities. A section 1983 claim on the basis of supervisorial liability is only cognizable where the supervisor "was personally involved in the constitutional deprivation or a sufficient causal connection exists between the supervisor's unlawful conduct and the constitutional violation." *Lolli v. Cnty. of Orange*, 351 F.3d 410, 418 (9th Cir. 2003). Thus, supervisors may be held liable pursuant to Section 1983 as follows:

> (1) for setting in motion a series of acts by others, or knowingly refusing to terminate a series of acts by others, which they knew ore reasonably should have known would

---

[6] Plaintiff's Fourth Amendment claims under Section 1983 alleging wrongful arrest are subject to the statute of limitations for Section 1983 actions. The statute of limitation in Section 1983 action is based on the personal injury statute of limitations under state law, which, in California, is two years. *Owens v. Okure*, 488 U.S. 235, 240-41 (1989) (statute of limitations period for Section 1983 actions is "a State's personal injury statute of limitations"); Cal. Code Civ. Proc. § 335.1 (personal injury actions must be brought within two years).

cause others to inflict constitutional injury; (2) for culpable action or inaction in training, supervision, or control of subordinates; (3) for acquiescence in the constitutional deprivation by subordinates; or (4) for conduct that shows a reckless or callous indifference to the rights of others.

*Moss v. U.S. Secret Service*, 675 F.3d 1213, 1231 (9th Cir. 2012) *reversed on other grounds in Ashcroft v. al-Kidd*, 131 S. Ct. 2074 (2011); *see also Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011) ("We therefore conclude that a plaintiff may state a claim against a supervisor for deliberate indifference based upon the supervisor's knowledge of and acquiescence in unconstitutional conduct by his or her subordinates.").

Here, the complaint does not allege facts showing that Defendant Davis was personally involved in any of the complained-of conduct.  Plaintiff alleges that Defendant Davis

was Chief of the Clovis Police Department, and, as such, she was the commanding officer of the Defendant [Officers], and was responsible for Defendant [Officers], and was responsible for the training, supervision, and conduct of Defendant[] [Officers]. [Chief Davis] is further responsible by law for enforcing regulations of Defendants [City of Clovis] and for ensuring that Clovis City Police officers obey the laws of the State of California and the United States of America.

(Doc. 7, ¶ 4.)  However, these allegations are too conclusory and devoid of facts to show how Defendant Davis was personally involved in the events of September 13, 2010, or any other events, nor does Plaintiff indicate how Defendant Davis is liable in her supervisory capacity.  Absent factual allegations in this regard, any claim against Defendant Davis in her individual capacity is not cognizable.  Plaintiff has already been informed of these deficiencies, but failed to cure them in his SAC.  Continuing failure to cure the allegations as they pertain to Defendant Davis will result in a recommendation that the claims against Defendant Davis be dismissed with prejudice.

**F.      Claims Against Defendant Officer Woods and Does 1 through 75**

Plaintiff fails to allege each Defendant's conduct or participation in the events.   Although Plaintiff asserts that Officer Woods entered his residence during the course of the search, Plaintiff does not make any other allegations about Officer Woods' conduct during the course of the search or arrest.

With regard to the twenty John Doe defendants Plaintiff names, the liability of "John Doe" defendants must be properly alleged.  A plaintiff may use "Doe" designations to refer to defendants

1   whose names are unknown; however, he must number them in the complaint, e.g., "John Doe 1,"

2   "John Doe 2," or otherwise distinguish each defendant so that every John Doe refers to a different

3   specific person.  Plaintiff must also identify how each defendant, including those named as Doe, is

4   liable for a constitutional violation.  *See Dempsey v. Schwarzenegger*, No. C 09-2921 JSW (PR),

5   2010 WL 1445460, at *2 (N.D. Cal. Apr. 9, 2010).

6        Plaintiff names 75 "Doe defendants" in this action without distinguishing each individual or

7   explaining how they participated in the alleged constitutional violations.  To the extent possible,

8   Plaintiff should allege specific acts attributable to each of the Doe Defendants, such as "John Doe

9   1 did X" and "John Doe 2 and 3 did Y."  *Alexander v. Tilton*, No. 1:07-cv-00759-LJO-DLB, 2009

10  WL 464486, *5 (E.D. Cal. Feb. 24, 2009).

11  **G.   Claims Against the Clovis Police Department**

12       Plaintiff names the Clovis Police Department as a defendant.  However, the Clovis Police

13  Department is not a proper defendant, and its inclusion in the suit is redundant because Plaintiff has

14  also named the City of Clovis as a defendant.

15       While Section 1983 is not itself a source of substantive rights, it provides a cause of action

16  against any *person* who, under color of law, deprives an individual of federal constitutional rights

17  or limited federal statutory rights.  42 U.S.C. § 1983; *Graham v. Connor*, 490 U.S. 386, 393-94

18  (1989).  The term "persons" encompasses state and local officials sued in their individual capacities,

19  private individuals, and entities which act under the color of state law and local governmental

20  entities.  *Vance v. Cnty. of Santa Clara*, 928 F. Supp. 993, 995-96 (N.D. Cal. 1996).  However, the

21  Clovis Police Department is a municipal *department* within the City of Clovis, and is not, as a

22  general matter, considered a "person" within the meaning of Section 1983.  *See United States v.*

23  *Kama*, 394 F.3d 1236, 1239 (9th Cir. 2005) (Ferguson, J., concurring) (noting that municipal police

24  departments and bureaus are generally not considered "persons" within the meaning of Section 1983);

25  *Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir. 1992) (affirming district court's dismissal of claims

26  against a county sheriff's department as entity not subject to suit); *Vance*, 928 F. Supp. at 995-96

27  (dismissing *sua sponte* Santa Clara Department of Corrections as improper defendant); *Jewett v. City*

28  *of Sacramento Fire Dep't*, No. CIV. 2:10-556 WBS KJN, 2010 WL 3212774, at *2 (E.D. Aug. 12,

2010) (finding fire department not a "person" under Section 1983 and dismissing suit against it); *Wade v. Fresno Police Dep't*, No. Civ. 09-0588 AWI DLB, 2010 WL 2353525, at *4 (E.D. Cal. June 9, 2010) (finding police department is not a "person" under Section 1983); *Morris v. State Bar of Cal.*, No. Civ. 09-0026 LJO GSA, 2010 WL 966423, at *3 (E.D. Cal. Mar. 11, 2010) (finding that a fire department is a municipal department and therefore not a "person" under Section 1983); *Sanders v. Aranas*, No. 1:06-cv-1574 AWI SMS, 2008 WL 268972, at *3 (E.D. Cal. Jan. 29, 2008) (finding Fresno Police Department improper defendant because it is a sub-division of the City of Fresno); *Brockmeier v. Solano Cnty. Sheriff's Dep't*, No. Civ-S-05-2090 MCE EFB PS, 2006 WL 3760276, at *4 (E.D. Cal. 2006) (dismissing Sheriff's Department as an improperly named defendant for purposes of Section 1983).

Moreover, Plaintiff has named the City of Clovis as a defendant – naming a department of the City of Clovis as a defendant is redundant. *See Abeytia v. Fresno Police Dep't,* No. 1:08-cv-01528 OWW GSA, 2009 WL 1674568, at *9 (E.D. Cal. June 12, 2009) ("Naming the [Fresno Police Department], which is a department of the City, as a defendant is redundant to naming the City of Fresno as a defendant."). Therefore, to the extent Plaintiff continues to allege Section 1983 claims against the Clovis Police Department, those claims will be recommended for dismissal without leave to amend as to the Clovis Police Department.

## H. Amended Complaint Must Be Complete in Itself Without Reference to Any Prior Pleading

While the Court is mindful that Plaintiff is proceeding pro se, even construing the allegations in the complaint liberally, there is no cognizable claim. *See Karim-Panahi v. L.A. Police Dept.*, 839 F.2d 621, 623 (9th Cir. 1988) (court must construe the pleadings liberally and afford plaintiff any benefit of the doubt). Therefore, Plaintiff's complaint is dismissed without prejudice. However, Plaintiff will be given an opportunity to amend the deficiencies in the complaint.

Plaintiff is advised that Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading. As a general rule, an amended complaint supersedes the original complaint. *See Lacey v. Maricopa County*, 693 F.3d 896, 907 n.1 (9th Cir. 2012) (en banc). Once Plaintiff files an amended complaint, the original pleading no longer serves any

function in the case.  Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.  If Plaintiff fails to file an amended complaint or fails to cure the deficiencies identified above, the Court may recommend that the complaint be dismissed with prejudice.

## IV.   CONCLUSION

For the reasons set forth above, Plaintiff's complaint is DISMISSED, and he is GRANTED thirty (30) days LEAVE TO AMEND.

IT IS SO ORDERED.

**Dated:   January 29, 2013**                                        /s/ Sheila K. Oberto
                                                            UNITED STATES MAGISTRATE JUDGE